IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FIVE RIVERS RANCH CATTLE FEEDING LLC,

*Plaintiff*,

vs().

KLA ENVIRONMENTAL SERVICES, INC. and STOPPEL DIRT, INC.,

*Defendants.*

Case No. 08-2185-EFM

**MEMORANDUM AND ORDER**

This case arises out of Defendant KLA Environmental Services, Inc.'s ("KLA") and Defendant Stoppel Dirt, Inc.'s ("Stoppel Dirt") alleged failure to construct a wastewater storage pond that satisfied the specifications set forth by Plaintiff Five Rivers Ranch Cattle Feeding LLC ("Five Rivers"). Now before the Court is Plaintiff's Motion for Review and Written Objections to Magistrate Judge's Order Dated November 24, 2009 (Doc. 96). In its briefing, Plaintiff Five Rivers claims that Magistrate Judge O'Hara incorrectly denied its motion for leave to file an amended complaint to add a contractual indemnity claim against Defendant Stoppel Dirt. For the reasons that follow, the Court denies Plaintiff's motion.

# I. BACKGROUND

Plaintiff Five Rivers hired Defendants KLA and Stoppel Dirt to construct a wastewater storage pond on its property. Plaintiff entered into separate contracts with each Defendant.[1] Pursuant to the contract that it entered into with Defendant KLA, KLA was to design and supervise the construction of the storage pond. Pursuant to the contract that it entered into with Defendant Stoppel Dirt, Stoppel Dirt was to construct the pond. Unfortunately for the parties, the pond started leaking less than two years after it was completed. Because of the pond's failure, Plaintiff has incurred costs and expenses.

On April 22, 2008, Plaintiff filed this lawsuit. In its complaint, Plaintiff asserted claims of negligence, res ipsa loquitur, breach of contract, breach of implied warranty, and contractual indemnity against Defendant KLA. It also asserted claims of negligence, res ipsa loquitur, breach of contract, and breach of implied warranty against Defendant Stoppel Dirt.

As is obvious from the above recitation, Plaintiff did not originally bring a contractual indemnity claim against Stoppel Dirt. Plaintiff alleges that it did not include such a claim because it did not know that an indemnification provision existed in the contract between Stoppel Dirt and itself. According to Plaintiff, the indemnification provision was on the second page, and, despite the fact that there was evidence on page one of the contract that there were additional pages,[2] it did not learn that there was a second page until it deposed Gerald Stoppel on July 14 and 15, 2009.

---

[1] The contracts with KLA and Stoppel Dirt were actually entered into by Five Rivers' predecessors. However, at least for the purposes of this motion, there is no dispute that Five Rivers acquired the rights under the contracts. Thus, the Court will follow the lead of the parties and refer to Five Rivers as the party to the contracts.

[2] Page one consists of only four numbered paragraphs. Paragraph four states that "[i]n consideration of the completion of the work described herein, and the fulfillment of all stipulations of this Agreement including compliance with *paragraph 14 hereof* to the satisfaction and acceptance of ContiBeef, Contibeef shall pay, or cause to be paid, to the Contractor the amount due to the Contract as set forth in Schedule A. *See* Ex. B to Doc. 1 (emphasis added).

After learning of this additional page, Plaintiff, for some unexplained reason, delayed filing its motion for leave to file an amended complaint to add an indemnity claim against Stoppel Dirt until October 7, 2009. The deadline for filing a motion to amend was December 19, 2008.

In its response to Plaintiff's motion for leave, Stoppel Dirt argued that the motion should be denied because (1) Plaintiff unduly delayed in bringing the motion, (2) amendment at this late date would result in prejudice to it, and (3) amendment would be futile. Finding that the amendment would be futile because Plaintiff was not seeking indemnity for claims brought by or against a third party, Magistrate Judge O'Hara denied Plaintiff's motion. Judge O'Hara did not discuss any of the other arguments raised by Defendant. Plaintiff appealed the Magistrate's decision to this Court.

## II. STANDARD OF REVIEW

The standard of review applied by this Court to a magistrate judge's order depends on whether the order relates to a nondispositive or dispositive pretrial matter. An order, like the one in this case, denying leave to amend that has the effect of dismissing potential claims is considered by this Court to be dispositive and is reviewed using a *de novo* standard.[3] The Court is free to affirm a magistrate's order on grounds different than those stated by the magistrate if such grounds are supported by the record.[4]

## III. ANALYSIS

Under Fed. R. Civ. P. 15(a)(2), once a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Rule 15(a)(2) specifies that the Court "should freely give leave when justice so requires." However, when

---

[3] *See Pedro v. Armour Swift-Eckrich*, 118 F. Supp. 2d 1155, 1157 (D. Kan. 2000).

[4] *See Nevils v. Barnhart*, 2005 WL 3464390, at *3 (D. Kan. Dec. 16, 2005).

the deadline set forth in the scheduling order for amending pleadings has passed, as is the case here, Fed. R. Civ. P. 16(b)(4) is also implicated.[5] Therefore, in order for its motion for leave to be granted, Plaintiff must satisfy both Rule 16 and Rule 15.

In cases where both Rule 16(b)(4) and Rule 15(a)(2) are applicable, this Court has employed a two-step analysis. In the first step, the Court determines whether the moving party has established that Rule 16(b)(4)'s "good cause" standard has been met.[6] Only after finding that the moving party has established good cause does the Court then move on to the question of whether the more liberal Rule 15(a) standard has been satisfied.[7]

**Rule 16(b)(4) Analysis**

To meet Rule 16's good cause standard, the moving party must show that the scheduling order's deadline "could not have been met with diligence."[8] "Carelessness is not compatible with

---

[5] *See, e.g., Denmon v. Runyon*, 151 F.R.D. 404, 407 (D. Kan. 1993). As pointed out by Plaintiff, the Tenth Circuit recently stated that it has not decided the issue of whether Rule 16(b)(4) applies in cases where a party attempts to amend their complaint after the time set forth in the scheduling order. *See U.S. ex re. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009); *Bylin v. Billings*, 568 F.3d 1224, 1231 n.9 (10th Cir. 2009). Despite this pronouncement, though, this Court has continued its practice of applying Rule 16(b)(4) in such instances. *See, e.g., Markham v. BTM Corp.*, 2009 WL 4507942, at *1 (D. Kan. Dec. 2, 2009); *Capital Solutions, LLC v. Konica Minolta Bus. Solutions U.S.A.*, 2009 WL 1635894, at *3 (D. Kan. June 11, 2009). Therefore, in light of this practice, the inherent logic in applying Rule 16(b)(4) in instances when a party attempts to amend their complaint after the filing deadline, *see Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (per curium) ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."), and the precedent emanating from other circuits, *see Bylin*, 568 F.3d at 1231 n.9 (citing cases), the Court will analyze Plaintiff's motion under Rule 16(b).

[6] *See, e.g., Capital Solutions, LLC*, 2009 WL 1635894, at *3.

[7] *Id.*; *Lipari v. U.S. Bancorp, N.A.*, 2008 WL 2944909, at *3 (D. Kan. July 28, 2008).

[8] *Lipari*, 2008 WL 2944909, at *2 (quoting *Simpson v. Home Depot, Inc.*, 203 F.R.D. 643, 644 (D. Kan. 2001)); *accord* Fed. R. Civ. P. 16 advisory committee note to 1983 amendment.

a finding of diligence and offers no reason for a grant of relief."[9] Furthermore, merely showing the lack of prejudice to the nonmovant will not do.[10]

Here, the Court finds that Plaintiff has failed to meet the good cause standard. Plaintiff simply has not shown that it could not have met the scheduling order's deadline for amending complaints despite its diligence. Unlike the plaintiffs in the cases cited by Plaintiff, Plaintiff, at the time it filed its complaint, had in its possession evidence that should have led it to the information that the proposed claim is based on. By referencing a paragraph that was not on page one, paragraph four put Plaintiff on notice that there were additional pages. If Plaintiff had diligently followed up on this notice, it would have discovered that the contract it was suing Stoppel Dirt under contained an indemnification clause, and, thus, been able to assert an indemnity claim against Stoppel Dirt long before the scheduling order's deadline. The fact that Stoppel Dirt appears to have believed that there was only one page to the parties' contract, as evidenced by the fact that it did not produce page two during its initial disclosure of documents, does not excuse Plaintiff's lack of diligence. In the absence of an allegation or support in the record for the conclusion that Defendant acted in bad faith, this fact is of no help to Plaintiff. Therefore, in light of Plaintiff's failure to diligently pursue all obvious avenues for possible claims against Stoppel Dirt, its motion for leave is denied.

---

[9]*Lipari*, 2008 WL 2944909, at *2.

[10]*Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995); *see also Smith v. W. Facilities Corp.*, 2006 WL 898134, at *4 (S.D. Ala. Apr. 5, 2006) ("[T]he Rule 16(b) inquiry does not turn on questions of prejudice. The issue is the integrity of the court's scheduling orders and pretrial deadlines, not the risk of harm to opposing parties.").

Because the Plaintiff has not satisfied Rule 16's requirement, the Court is not required to consider whether Plaintiff can meet the standard promulgated under Rule 15(a).[11] However, out of an abundance of caution, the Court will apply the Rule 15(a) analysis.

**Rule 15(a)(2) Analysis**

In addition to failing under Rule 16, Plaintiff's motion also fails under Rule 15. Under Rule 15(a)(2), the Court may deny leave when there is a showing of "undue delay, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party, or futility of amendment."[12] Here, Stoppel Dirt contends that Magistrate Judge O'Hara was justified in denying Plaintiff's motion for the following three reasons: (1) Plaintiff has unduly delayed the filing of its motion, (2) granting leave to amend would unduly prejudice Defendant, and (3) Plaintiff's proposed amendment would be futile. Because this Court finds that Plaintiff unduly delayed in filing its motion and that the proposed amendment would be futile, it does not reach Defendant's prejudice argument.

### *Undue Delay*

While "[l]ateness does not of itself justify the denial of [an] amendment,"[13] undue delay does.[14] In determining whether the delay is undue, Courts in this Circuit are to focus primarily on

---

[11]*See Lipari*, 2008 WL 2944909, at *3; *E.E.O.C. v. Exel Inc.*, 259 F.R.D. 652, 656 (N.D. Ga. 2008).

[12]*Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993).

[13]*R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975).

[14]*Minter v. Prim Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006).

the moving party's stated reason for the delay.[15] "When the party filing the motion has no adequate explanation for the delay," the denial of their motion is justified.[16]

In this case, the Court finds that Plaintiff has failed to provide an adequate explanation for waiting to file its motion until October 7, 2009. To begin with, as discussed above, Plaintiff should have known that there was a second page to the contract that it was suing Defendant under.[17] If Plaintiff would have carefully read the language on the first page of its contract, it would have discovered the information necessary to assert an indemnification clause claim against Defendant Stoppel Dirt long before the December 2008 deadline passed. As a result, Plaintiff's argument that its late amendment is justified on the ground it did not know there was an indemnification clause until after the summer of 2009 is unavailing. Furthermore, Plaintiff has provided no explanation for why it waited nearly three months after the deposition of George Stoppel to add a contractual indemnity claim.[18] Therefore, for these reasons, the Court concludes that Plaintiff's motion for leave should be denied on the basis of undue delay.

---

[15]*Id.* at 1206.

[16]*Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir. 1994).

[17]*See Potts v. Boeing Co.*, 162 F.R.D. 651, 653 (D. Kan. 1995) ("[W]here the party seeking an untimely amendment knows or should have known of the facts upon which the proposed amendment is based, but fails to assert them in a timely fashion, the motion to amend is subject to denial.").

[18]*See, e.g., Guidance Endodontics, LLC v. Dentsply Int'l,* Inc., 2009 WL 3672505, at *4 (D.N.M. Sept. 29, 2009) (finding undue delay where the moving party waited several months after learning the factual predicate of their proposed claim to file an amended complaint); *Wilson v. Wal-Mart Stores, Inc.*, 2008 WL 2622895, at *4 (D. Kan. June 30, 2008) (same).

*Futility*

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."[19] In considering whether a proposed amendment is futile, the Court uses the same analysis that governs a motion to dismiss made under Fed. R. Civ. P. 12(b)(6).[20] Thus, a proposed amendment is futile if it fails to "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."[21]

Because the contract between Five Rivers and Stoppel Dirt contains a choice-of-law provision that states that the contract shall be construed according to the laws of the State of Colorado, the Court must look to Colorado law to determine whether the proposed claim is clearly futile. Under Colorado law, indemnity provisions are governed generally by the same rules of construction that govern other contract provisions.[22] As a consequence, "indemnity contracts are generally construed to effectuate the parties' intentions."[23] To ascertain the parties' intent, the Court must apply the plain and generally accepted meaning of the provision's language and interpret the agreement in its entirety.[24] Individual clauses or phrases are not to be viewed in isolation.[25] The Court may look beyond the four corners of the agreement only when the "terms of the agreement

---

[19]*Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

[20]*Pedro*, 118 F. Supp. 2d at 1158.

[21]*Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009).

[22]*Mid Century Ins. Co. v. Gates Rubber Co.*, 43 P.3d 737, 739 (Colo. Ct. App. 2002).

[23]*Pub. Serv. Co. of Colo. v. United Cable TV of Jeffco, Inc.*, 829 P.2d 1280, 1283 (Colo. 1992).

[24]*Mid Century Ins. Co.*, 43 P.3d at 739.

[25]*Kuta v. Joint Dist. No. 50(J)*, 799 P.2d 379, 382 (Colo. 1990).

are ambiguous or are used in some special or technical sense not apparent from the contractual document itself.[26]

> The indemnification provision in the contract between Five Rivers and Stoppel Dirt states:
>
> [Stoppel Dirt] hereby agrees to protect, indemnify, and hold [Five Rivers] harmless against and from any and all liability of any and every kind, nature and description for injury to or death of any person or persons whomsoever and for loss or damage to any property whatsoever, together with all costs and expenses incident thereto arising in any manner, either directly or indirectly, out of or in connection with the performance of this Agreement, provided such indemnification shall not extend to injury, death, loss or damage caused by the gross negligence or willful misconduct of [Five Rivers].

Focusing on the word "indemnify" and phrase "loss or damage to any property whatsoever, together with all costs and expenses incident thereto arising in any manner, either directly or indirectly, out of or in connection with the performance of the Agreement," Plaintiff argues that the provision's language evinces Stoppel Dirt's intent to not only reimburse Plaintiff for any loss or damage that it has suffered from the wastewater storage pond's failure, but also any cost or expense it has incurred from bringing this lawsuit. The Court disagrees. The fundamental flaw in Plaintiff's argument is that it ignores the fact that the indemnification clause also contains the words "protect" and "hold harmless." While it is true that the term indemnify, when read in isolation, could be read to refer to "[a] duty to make good any loss, damage, or liability incurred by another,"[27] it is important to recognize that the term is not by itself. Rather, it is sandwiched between the terms "protect" and "hold harmless."[28] As a consequence, the term indemnify must be interpreted in

---

[26]*Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1314 (Colo. 1984).

[27]Black's Law Dictionary 783 (8th ed. 2004).

[28]This fact distinguishes this case from the indemnification clause cases cited by Plaintiff in their reply. None of those cases involved an indemnification clause that included the term protect or defend. *See Canopy Corp. v. Symantec Corp.*, 395 F. Supp. 2d 1103, 1115 (D. Utah. 2005) (finding the cases cited by the plaintiff "not persuasive" because they did not include the term defend).

relation to these words.²⁹ A number of courts have concluded that when the term indemnify is used in a context similar to that found here that the term represents an intent of the parties to compensate the indemnitee only for the liability, costs, and expenses arising out of claims made against it by a third party.³⁰ The Court agrees with this interpretation and accordingly finds that Plaintiff has a claim under the indemnification provision in question here only if it has incurred liability, costs, or expenses as a result of injury to a third party's person or property.

In its amended complaint, Plaintiff does not allege that it has been subject to third-party liability. In fact, Plaintiff's complaint does not even state that a third party has been injured as a result of the wastewater storage pond's failure. As a consequence, the Court finds that Plaintiff's proposed claim fails to state a basis on which relief could be granted.³¹

To be clear, the Court does not find that Plaintiff's proposed claim is futile because Colorado law categorically bars claims made by an indemnitee against its indemnitor. Rather, the claim is futile because the Court finds, after reading the parties' contract as a whole, that the parties clearly

---

²⁹*See Neal v. Clark*, 95 U.S. 704, 708-09 (1877) (discussing canons of construction for written instruments); *see also Canopy Corp.*, 395 F. Supp. 2d at 1115 (stating that "the parties' use of the term 'defend' necessarily narrows the sweep of the indemnifying language").

³⁰*See, e.g., Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 255 (3d Cir. 2010); *St. Paul & Marine Ins. Co. v. Elkay Mfg. Co.*, 2003 WL 139775, at *7 (Del. Super. Ct. Jan. 17, 2003); *Estate of Pearson v. Interstate Power & Light Co.*, 700 N.W.2d 333, 344-45 (Iowa 2005); *see also Exelon Generation Co., LLC v. Tugboat Doris Hamlin*, 2008 WL 2188333, at *2 (E.D. Penn. May 27, 2008) (stating that "a common sense reading" of the indemnity provision in question, which contained the terms indemnify, hold harmless, and defend, "suggests that it refers only to third-party claims"); *Canopy Corp.*, 395 F. Supp. 2d at 1116 (concluding that the indemnification clause, which contained the terms indemnify, hold harmless, and defend, "demonstrates that [the indemnitee] may only recover from [the indemnitor] for claims brought against it by third parties"); *Hallmark Ins. Adm'rs, Inc. v. Colonial Penn Life Ins. Co.*, 697 F. Supp. 319, 328 (N.D. Ill. 1988) (noting that "[t]he language 'indemnify, defend and hold harmless' strongly suggests that this provision only applies in the event [that the indemnitee] is found liable to a third party").

³¹*See Travelers Indem. Co.*, 594 F.3d at 256 (finding that the moving party's indemnity claim was futile because there was no allegation in the proposed complaint that any person who had made a claim against the party had based their claim on personal injury or property damage, which were the only types of claims that the parties' indemnification clause covered).

intended for Five Rivers to only recover from Stoppel Dirt for liability, costs, and expenses arising out of injury to a third party. Because the parties clearly intended to cover only these types of damages and Five Rivers has not alleged in its amended complaint that it has suffered such damages, Plaintiff's contractual indemnity claim is not facially plausible, and, as a consequence, is futile. Therefore, for this reason, and the others stated herein, the Court finds that Magistrate Judge O'Hara did not err in denying Plaintiff's motion for leave.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Review and Written Objections to Magistrate Judge's Order Dated November 24, 2009 (Doc. 96) is hereby DENIED.

**IT IS SO ORDERED.**

Dated this 25th day of June, 2010, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE